UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Aaron Russel Drain,

             Plaintiff

v.

Calvin Johnson, et al.,

             Defendants

Case No. 2:22-cv-00924-CDS-DJA

**Order Granting Defendants' Motion for Summary Judgment and Motion for Leave, and Closing Case**

[ECF Nos. 32, 41]

      This is a 42 U.S.C. § 1983 civil rights action brought by formerly[1] incarcerated pro se plaintiff Aaron Drain, against defendants Dr. Wilson Bernales, Dr. David Rivas, and medical scheduler Jaymie Cabrera[2] for events that allegedly occurred during his incarceration at High Desert State Prison (HDSP). *See generally*, Second Am. Compl. (SAC), ECF No. 9. On September 28, 2023, defendants moved for summary judgment, arguing that Drain failed to exhaust his administrative remedies, barring this action, and that further, Drain cannot establish a genuine issue of material fact. *See generally* Defs.' MSJ, ECF No. 32. The opposition to the summary judgment motion was initially due on October 19, 2023. *Id.*; *see also* Local Rule 7-2(b) ("The deadline to file and serve any points and authorities in response to a motion for summary judgment is 21 days after service of the motion."). Drain filed a motion for an extension of time to respond to the motion. ECF No. 40. That motion was denied as moot but, recognizing that Drain was seemingly released from custody sometime shortly after defendants filed their summary judgment motion and after he filed a motion for an extension of time, the court sua sponte extended the deadline to respond to defendants' motion for summary judgment to June 7, 2024. ECF No. 46. To date, Drain has failed to file an opposition to the motion for summary judgment.

---

[1] After being ordered to do so, Drain updated his address from the Nevada Southern Detention Center to a residence in Las Vegas, Nevada on November 17, 2023. *See* Order directing Drain to update his address, ECF No. 42; Notice of change of address, ECF No. 43.
[2] All other defendants have been dismissed from this action.

Defendants also filed a motion for leave to file supplemental exhibits for the purpose of authenticating several exhibits previously attached to their summary judgment motion. ECF No. 41. Any opposition to that motion was due on October 26, 2023. *Id.*; *see also* LR 7-2(b). To date, Drain has not filed an opposition to the motion.

Because the evidence supports that Drain failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), and without any evidence from Drain to the contrary, defendants' motion for summary judgment is granted. Further, finding there is good cause and given Drain's lack of opposition, defendants' motion for leave to file supplemental exhibits is granted.

## I. Legal standard

### A. Summary judgment

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in the Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is material if it could affect the outcome of the case. *Id.* at 249. At the summary-judgment stage, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

District courts may grant an unopposed motion for summary judgment if the movant's papers sufficiently support the motion and do not present on their face a genuine issue of material fact. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The failure to oppose a motion for summary judgment does not permit the court to enter summary judgment by default, but the lack of a response is not without consequences. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). As Rule 56(e) explains, "[i]f a party fails . . . to properly address another party's assertion of fact[,] . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3); *Heinemann*, 731 F.3d at 917. But the nonmoving party's failure to respond does not absolve the moving party from its affirmative duty to demonstrate that it is entitled to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182–83 (9th Cir. 2003).

### B. The Prison Litigation Reform Act's exhaustion requirement

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA]." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 42 U.S.C. § 1997e). The PLRA's exhaustion provision provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement gives an agency the opportunity to correct its own mistakes before being dragged into federal court, and it promotes greater efficiency and economy in resolving claims. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). The exhaustion requirement is not "left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "Failure to exhaust under the PLRA is 'an affirmative defense [that] the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones*, 549 U.S. at 204). However, "a prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively

unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018) (citing *McBride*, 807 F.3d at 987).

"The Ninth Circuit instructed in *Albino v. Baca* that a summary-judgment motion is the proper procedural device to resolve PLRA exhaustion questions." *Hobson v. Clark Cnty.*, 2019 WL 1442171, at *3 (D. Nev. Mar. 31, 2019) (citation omitted). It is "the defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. If this is accomplished, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.

## II. Background

In the SAC,[3] Drain makes several allegations related to his medical care following his surgery on a tendon on his right thumb. SAC, ECF No. 9 at 3. Drain alleges that defendants were deliberately indifferent to him in the handling of his thumb injury by delaying surgery to repair it and in their post-operative care of him, including delayed removal of a wire[4] that was inserted into his hand during his surgery, which contributed to post-surgical pain, an infection, and exacerbated his injury, which in turn caused "permanent damage" to his hand. *Id.* at 3–6.

### A. Drain receives medical attention from a non-NDOC doctor, Jonathon Sorrelle at Nevada's Minimally Invasive Hand Institute.

Defendants do not dispute that Drain was seen by an outside doctor related to his complaints of pain in his right thumb and wrist. Mot., ECF No. 32 at 6; *see also* Drain's Medical Chart (sealed), Defs.' Ex. H, ECF No. 32-4. In fact, he was seen by a physician outside the

---

[3] Because Drain failed to file an opposition, the court cites to the SAC to provide context for this action. Any citation to allegations in the SAC serves to explain the underlying allegations and does not serve as a finding of fact.

[4] Drain identifies the wire as a "K-wire" in his complaint. *See* ECF No. 9 at 5, 8.

4

facility—Dr. Jonathan Sorrelle at the Minimally Invasive Hand Institute. *Id.* According to the exhibits provided by defendants, Drain was first seen by Dr. Sorrelle on June 9, 2021, where he presented with a chief complaint of "RIGHT WRIST AND FINGER PAIN."[5] Drain's Medical Chart (sealed), Defs.' Ex. H, ECF No. 32-4 at 2. During that visit, Drain was diagnosed with an injury to the "extensor tendon of [his] right hand." *Id.* at 2–3. The medical chart reflects that the doctor discussed treatment options with Drain, and after exploring those options, the doctor recommended that Drain undergo an "EPL repair[.]" *Id.* at 4.

Thirteen days later, on June 22, 2021, an NDOC provider issued a "Consultation Request" For "SURGERY: EPL REPAIR ON Rt HAND(S)[,]" mirroring Dr. Sorrelle's recommended treatment plan. Consultation Request–Report Forms, Defs'. Ex. I (sealed), ECF No. 34-5 at 2. That request was approved on June 30, 2021; surgery was subsequently scheduled for September 17, 2021. *Id.*

### B. Dr. Sorrelle performs surgery on Drain's right thumb.

Drain underwent surgery on the scheduled date. Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7 at 3. Drain was provided post-operative, discharge instructions, Post-Op instructions (sealed), Defs.' Ex. J, ECF No. 34-6, which included two prescriptions: one for 500 mg of Keflex every six hours, and one for 300 mg of Tramadol ER (once daily or as needed). *Id.* at 3. Following his discharge, Drain returned to HDSP where he was provided with Keflex,[6] a Tylenol pain pack, and ice packs. Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7 at 2; Medication Log (sealed), Defs.' Ex. L,[7] ECF No. 34-8 at 2–3; Medication administration logs (sealed), Defs.' Ex. O, ECF No. 34-11; *see also* Physician's order (sealed), Defs.' Ex. M, ECF No. 34-9 at 2–3.

---

[5] The medical notes also state that "[Drain] hit a TV [with his] right hand IP extension since then. [Drain] has no other complaints." Defs.' Ex. H, ECF No. 34-4 at 3.

[6] Also known as cephalexin.

[7] Drain's medication logs reflect he was provided Keflex on September 17, 2021, and twice on September 23, 2021. Medication log (sealed), Defs.' Ex. L, ECF No. 34-8 at 2–4. The log also reflects he was given acetaminophen on September 23, 2021, and on November 13, 2021. *Id.* at 3, 6.

NDOC documentation shows that Drain was seen for "[p]ost operative dressing removal" on September 21, 2021, which also noted there was a required follow-up on September 29, 2021. Continuity of care (sealed), Defs.' Ex. N, ECF No. 34-10 at 2. The documentation does not include information on why or what the follow-up appointment was needed to address.

The physician's orders reflect that Drain was admitted to the infirmary on October 9, 2021. Physician's orders (sealed), Defs.' Ex. M, ECF No. 34-9 at 4. The doctor's note states that Drain was to "soak the suture site with hydrogen peroxide and try to remove remaining sutures." *Id.* On October 11, 2021, Drain's progress notes reveal that his right thumb was swollen. Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7 at 3. The progress notes also reflect that Drain was to continue the antibiotic, directed to elevate his thumb, and an X-ray was ordered to check for osteolysis or osteomyelitis.[8] *Id.* The next entry on the physician's orders related to Drain's hand surgery is from December 28, 2021, which states "Sick call for 'hardware removal' already given to [illegible] Nicole to schedule [illegible]." Physician's orders (sealed), Defs.' Ex. M, ECF No. 34-9 at 5. The next progress note is also from December 28, 2021. *Id.* It reflects that Drain's mother called to inquire about his post-surgery "hardware removal." Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7 at 3. The progress note reflects a phone call to Dr. Sorrelle's office and the caller[9] was advised "Leticia" (from Sorrelle's office) advised there was no hardware in Drain but that she would consult with Dr. Sorrelle and call back. *Id.* The next note, dated December 29, 2021, is difficult to decipher. It appears that Dr. Sorrelle returned Dr. Bernales' call, and advised that there was "no rod, no hardware."[10] *Id.* There is also an "Xray"

---

[8] "Osteolysis" or "Osteomyelitis" is what the court deciphered from the handwritten progress notes. The Merriam-Webster dictionary defines osteolysis as "dissolution of bone especially when associated with resorption." *See* https://www.merriam-webster.com/medical/osteolysis (last accessed July 17, 2024); and osteomyelitis as an infectious usually painful inflammatory disease of bone often of bacterial origin. *See* https://www.merriam-webster.com/dictionary/osteomyelitis (last accessed July 26, 2024).

[9] It appears Dr. Bernales entered both this, and the previous (December 28, 2021) progress note. Progress Notes, Def. Ex. K, ECF No. 34-7 at 2.

[10] The progress note also states that "[t]here is also a note that Drain was full of ear wax, he did not want to address that condition, rather he wanted to "argue unnecessarily about a non-existing rod in his [right] thumb." *Id.*

notation.[11] *Id.* Dr. Bernales' declaration states after seeing Drain on December 29, 2021, he "suspected [his] surgical wound was still healing[,]" and that he "would . . . . order an x-ray if necessary to diagnose the presence of hardware." Dr. Bernales Decl. (sealed), Defs.' Ex. B, ECF No. 34-1 at 5, ¶ 18.

Drain received an x-ray of his right thumb and abdomen, but the results of the imaging were not shown to Dr. Bernales until February 9, 2022. *See* X-ray report (sealed), Defs.' Ex. Q, ECF No. 34-13; Dr. Bernales Decl., Defs.' Ex. B, ECF No. 34-1 at 6, ¶ 20; Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7. The x-ray revealed there was a wire in Drain's thumb. X-ray report (sealed), Defs.' Ex. Q, ECF No. 34-13 at 3–4. The report from the x-ray states the following:

> "A wire is noted extending from the skin surface at the tip of the thumb through the distal phalanx into the distal aspect of the proximal phalanx of the thumb. There is no obvious fracture. A small separate bony element may represent a small ossicle. An ununited avulsion fraction from the base of the distal phalanx may be a less likely consideration. The hand and wrist otherwise appear intact with no significant degeneration changes."

*Id.* at 2.

The progress note is dated February 17, 2022. Progress notes (sealed), Defs.' Ex. K, ECF No. 34-7 at 3. While difficult to decipher, however, the court can read "K-Wire for Stabilization of [right][12] thumb." *Id.* Dr. Bernales completed the necessary paperwork to get an appointment with Dr. Sorrelle to remove the wire.[13] Dr. Bernales Decl., Defs.' Ex. B, ECF No. 34-1 at 6, ¶ 21; Consult request-report form (sealed), Defs.' Ex. I, ECF No. 34-5 at 5. Cabrera cannot recall what day she, or her administrative assistant, scheduled the removal appointment with Sorrelle, but notes that an appointment was scheduled for Drain for March 23, 2022. Cabrera Decl., Defs.' Ex. D, ECF No. 34-3 at 4, ¶¶ 12–13. The progress note also states that "[Drain][14] had broken distal portion of K-Wire and has refused to have procedure," and notes a "release of liability for refusal

---

[11] Defendants' Exhibit Q reveals Drain was x-rayed on February 9, 2022. X-ray report (sealed), Defs.' Ex. Q, ECF No. 34-13.
[12] Written as "R" which the court interprets as "Right."
[13] Dr. Bernales' request for Drain to undergo a removal procedure was ultimately approved by Utilization Review Panel (URP) on February 23, 2022. URP Decisions from 2022-02-16 (sealed), Defs.' Ex. W, ECF No. 34-15; URP Decisions form 2022-02-23 (sealed), Defs.' Ex. X, ECF No. 34-16 at 20.
[14] Written as "Pt" which the court interprets as "patient."

of health care treatment." Defs.' Ex. K, ECF No. 34-7 at 3. The last sentence of the note reflects that Drain[15] stated he understood and declined to sign the refusal form in front of three witnesses. *Id.* The "Release of Liability for Refusal of Health Care Treatment" is included as defendants' Exhibit R. Release of liability form (sealed), Defs.' Ex. R, ECF No. 34-14. The form is signed by Drain and dated February 17, 2022. *Id.* at 2. Drain was seen by Dr. Sorrelle on March 23, 2022 (Hand Institute charts, Defs.' Ex. H, ECF No. 34-4 at 5–7), and ultimately removal surgery was scheduled for April 2022. Dr. Bernales Decl. (sealed), Defs.' Ex. D, ECF No. 34-1 at 6, ¶ 24; Consult request-report form (sealed), Defs.' Ex. I, ECF No. 34-5.

### C. Drain files grievances related to his post-operative care.

Drain filed an informal grievance[16] regarding his wound care on September 26, 2021, which failed to include a requested remedy as required by AR 740.03,[17] which states that an "inmate **must** state the action or remedy that will satisfy the claim in the grievance" and that if an inmate fails to do this, the "grievance will not be accepted and [will be] returned to the inmate with an explanation as to what was missing for the grievance to be processed." Grievance number 2006-31-29355, Defs.' Ex. S, ECF No. 32-19 at 3–6; AR 740, Defs.' Ex. V, ECF No. 32-22 at 4. Consequently, the grievance was rejected on December 6, 2021, and an *Improper Grievance Memo* was issued giving Drain instructions to "[p]lease correct and resubmit within 5 days of receipt of this memo…" with additional instructions. Grievance number 2006-31-29355, Defs.' Ex. S, ECF No. 32-19 at 2, 13. Drain resubmitted the informal grievance on December 9, 2021. *See id.* at 9–12 (stamped "RECEIVED Dec 09 2021"). The grievance was again rejected because, while it included a requested monetary remedy, Drain failed to attach a DOC 3091, as

---

[15] Written as "Pt."

[16] The court notes that defendants' exhibits include Drain's September 26, 2021 handwritten grievance in Exhibit U, but the electronic grievance exhibit fails to include that grievance. *See* Drain's grievance history report, Defs.' Ex. U, ECF No. 32-21. The court is concerned there is a possibility that the electronic grievance history exhibit is incomplete, as they grievances and responses thereto are out of order and difficult to follow. But it appears that, even without that grievance, there is no record or evidence of Drain filing anything past the informal (IF) level grievance. *See id.* Nor is there any evidence that Drain appealed the denial of any informal grievance related to medical care for his thumb.

[17] The deficiency was specifically identified "AR 740.03 number 1a."

8

AR 740.08(7)(B) requires. *Id.* at 13; *see also* AR 740, Defs.' Ex. V, ECF No. 32-22 at 10. Drain resubmitted the grievance a third time, but it was again rejected because it included an administrative claim form asking for $7,000 as a remedy, which exceeded the $500 cap for personal injury claims pursuant to AR 740.05(4). *See* Grievance number 2006-31-29355, Defs.' Ex. S, ECF No. 32-19 at 21–30; Grievance 33671, Defs.' Ex. T (stamped "RECEIVED Jan 25 2022), ECF No. 32-20; AR 740, Defs.' Ex. V, ECF No. 32-22 at 9. After Drain's third attempt to submit his informal grievance, HDSP refused to accept any further submissions. There is no evidence that Drain submitted any proper informal grievances, or appealed the denial of said grievances, regarding his post-surgical care within six months of October 2021. *See* Drain's grievance history report, Defs.' Ex. U, ECF No. 32-21.

### III.  Discussion

This court is concerned with what occurred with Drain's post-operative care. The record demonstrates that a wire was, in fact, implanted in his right thumb as part of his September 2021 surgery. However, the record suggests that NDOC was unaware that the wire was implanted, and further, it appears NDOC was not instructed that the wire needed to be removed. This suggests there was potentially some negligence with Drain's post-surgical care. For the reasons set forth below, the court cannot resolve Drain's deliberate indifference claims on the merits, so it makes no findings regarding Drain's post-operative care. Rather, the court notes its concern regarding the lack of information and instructions provided to Drain and NDOC following his surgery by Dr. Sorrelle and his office.

The court cannot address Drain's deliberate indifference claims on the merits because the record demonstrates that Drain failed to exhaust his administrative remedies before bringing this action. Exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. In Nevada, the remedies available to inmates are promulgated under Nevada Department of Corrections

Administrative Regulation 740 (AR 740). The purpose of AR 740 is to "set forth the requirements and procedures of the administrative process that [Nevada Department of Corrections (NDOC)] inmates must utilize to resolve addressable grievances and claims including . . . any [] tort or civil rights claim relating to conditions of confinement." *Welch v. Liggett*, 2023 WL 158603, at *3 (D. Nev. Jan. 11, 2023). The AR also gives an inmate the ability to appeal the denial of a grievance and sets forth a multi-level dispute resolution grievance structure under which an inmate must satisfy each level's substantive and procedural requirements before filing the next, higher-level grievance. *Id*. It requires inmates to first pursue resolution via alternative means, "such as discussion with staff or submitting an inmate request form." *Id*. Once an inmate has exhausted alternative means, the inmate may file an informal grievance. *Id*. If that fails to provide the requested relief, the inmate may file a first-level grievance, and if that fails, a second-level grievance. *Id*. An inmate exhausts his administrative remedies either after a denial of the second-level grievance, or "if the [g]rievance is '[g]ranted' at any level." *Id*.

      Here, the record shows that Drain did start the grievance process by filing informal grievances. *See generally* Grievance history report, Defs.' Ex. U, ECF No. 32-21. But Drain failed to comply with requirements of AR 740 so the grievance that was filed approximately two weeks after his surgery, in September of 2021, were rejected three times: first, for failing to request a remedy as required; second, for failing to attach a DOC 3095, as required under AR 740.08(7)(B); and third, for seeking $7,000, which exceeded the $500 personal injury amount permitted under the AR. *See generally id*. Drain was then restricted from filing any more grievances related to 2006-31-29355, and this grievance was not fully exhausted.

      Drain failed to file any subsequent completed grievance related to his medical care. *See, e.g., id.* at 3 (informal grievance where Drain accused the facility of lying about refusing medical care over removal of the K-wire, and noting that his thumb is in "extreme pain"); *id.* (Drain objecting to Dr. Rivas removing the "protruding rod from [his] thumb that was supposed to be

removed 6 months ago"); *id.* at 5 (grievance stating, "My constitutional right as a prisoner to receive adequate (sic) medical treatment has been violated."); *id.* at 6 ("I had a surgery on 9/17/2021. I am being denied adequate medical treatment because of HDSP's denial of the medication…."). Each of these grievances were informal, and there is no record of Drain ever appealing the denial or rejection of those grievances. Thus, the evidence shows that Drain failed to follow the requirements set forth in AR 740 and therefore failed to exhaust his administrative remedies before filing this action. Drain failed to respond to this motion after being given ample time to do so, and thus before the court is no argument that the administrative remedies were effectively unavailable to Drain as a matter of law.[18] Consequently, I find that Drain failed to exhaust his administrative remedies, so I grant defendants' motion for summary judgment. Accordingly, the court does not address Drain's claim of deliberate indifference.

## IV.    Conclusion

IT IS HEREBY ORDERED that the defendants' motion for summary judgment **[ECF No. 32]** and defendants' motion for leave **[ECF No. 41] are GRANTED**.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: July 26, 2024

_____
Cristina D. Silva
United States District Judge

---

[18] Out of an abundance of caution, the court considers that an argument can be made that the prison's restriction on Drain's filing further grievances related to 2006-31-29355 made administrative remedies unavailable to him as a matter of law. While the PLRA requires a prisoner to comply with the prison's procedures for pursuing administrative remedies to properly exhaust, *Jones*, 549 U.S. at 218, the prison may not deny grievances arbitrarily or on a ground of which a prisoner has no notice. *See, e.g., Mayo v. Williams*, 2016 U.S. Dist. LEXIS 139140, *8 (D. Nev. Oct. 6, 2016) (restrictions on further filing based on improper rejections constitute exhaustion). Here, however, every ground upon which the prison rejected Drain's grievances were explicitly outlined in AR 740, of which Drain had access and notice. Thus, the instruction to not submit further grievances related to 2006-31-29355 was an appropriate exercise of the prison's ability to enforce its own procedures and not an improper impediment making the process unavailable. *Cf. Loyd v. Allison*, 2024 U.S. Dist. LEXIS 50702, *3–4 (C.D. Cal. Mar. 20, 2024) (the "'direction' to not resubmit grievances appears to have resulted from Plaintiff's untimeliness, not because of some impediment that made the process unavailable"). The court also notes that Drain was not prohibited from subsequently filing further grievances related to his medical care in 2022, ECF No. 32-21 at 3–6, and thus had the opportunity to administratively exhaust before filing.